**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA :

          v.              :        **21-CR-0576 (RC)**

**FLOYD RAY ROSEBERRY**     :

**DEFENDANT'S MOTION TO RECONSIDER
<u>ORDER OF DETENTION AND IMPOSE CONDITIONS OF RELEASE</u>**

Mr. Floyd Ray Roseberry, through undersigned counsel, respectfully moves this Honorable Court to reconsider the order of detention issued by Magistrate Judge Zia M. Faruqui on September 22, 2021, and to impose conditions of release. Mr. Roseberry consented to detention at that time, but circumstances have changed and demonstrate that there are conditions of release that will reasonably assure both the safety of the community and Mr. Roseberry's appearance in Court. Specifically, Mr. Roseberry asks that the Court release him to 24-hour home confinement with GPS monitoring at his home in North Carolina, and with his wife acting as third-party custodian to ensure that he continues to take his currently prescribed medications—at the time of the charged offenses, Mr. Roseberry had been taking a prescribed medications that were contraindicated for his condition, but he is now taking appropriate and effective medications.

**<u>Factual and Procedural Background</u>**

Mr. Roseberry is 50 years old and has suffered from mental health disorders since he was a teenager. His only prior convictions were a misdemeanor offense (misdemeanor larceny) and a traffic offense (operating a vehicle without a license) that he committed when he was 18 years old.

While he was growing up in North Carolina, his father was an alcoholic and abusive to him, his mother, and his sister. When Mr. Roseberry was fourteen years old, he dropped out of school and left home in order to survive. He was homeless for a short time. His aunt and uncle found him and brought him to live with them. At the age of fifteen, he began working in a cotton mill for Ithaca Industries in Gastonia, North Carolina. He worked there for more than ten years, until the factory closed. He then earned his GED and went back to school at Cleveland Community College. He took three years of college courses and graduated with an associate degree and certified in welding, CAD, and blueprint reading.

Unfortunately, not long after graduation, he was shot in his arm during a dispute with his brother-in-law, while protecting his sister. His arm was severely damaged, and he was unable to use it or move his fingers. This struggle contributed to the deterioration of his mental health.

He had been seeing therapists and mental health providers since he was a teenager. He has been diagnosed with bipolar disorder and PTSD from the trauma he suffered as a child. Approximately 15 years ago, he was placed on disability for both his physical and mental limitations. Over the years, Mr. Roseberry continuously has struggled to find and maintain adequate care in his small community. Many doctors leave the area for better opportunities, and hospitals have limited resources.

Mr. Roseberry has one son with his first wife. His son is now 24 years old and has a daughter of his own. In 2013, Mr. Roseberry married his current wife, who works as a quality manager for a metal machine shop. The couple live on a seven-acre property and raise goats and other farm animals. His wife has consistently helped Mr. Roseberry maintain his medication regime and seek help when prescribed medications are not adequate. Their lives were stable for many years until they experienced several losses in a short period of time.

2

In 2017, Mr. Roseberry's mother was diagnosed with cancer, and after a long struggle, she died in 2018. The following year, his father-in-law died after having a heart attack. A few months later, his uncle and aunt both died. His uncle died from heart failure, and his aunt died soon after from what Mr. Roseberry describes as "the grief."

Coping with all of this loss in a short period of time was very difficult for Mr. Roseberry, who was struggling to maintain his mental health. By summer 2020, Mr. Roseberry was suicidal, and his wife called the suicide hotline in an effort to get help. Authorities took Mr. Roseberry to a local hospital, but were told the hospital did not have room for him. Authorities then took him to a facility in Winston-Salem, North Carolina. This facility also did not have the resources to treat Mr. Roseberry. Mr. Roseberry returned home and later saw his primary care physician, who prescribed medication to address his mental health. At first, the medication seemed to work, but symptoms returned a short time later. The physician changed the medication several times with little success. The week prior to Mr. Roseberry's arrest, the doctor changed the medication again. Mr. Roseberry's wife confirms that Mr. Roseberry took the medication as directed until the date of his arrest—she made sure he did. Unfortunately, the doctor prescribed the wrong medication, but Mr. Roseberry and his wife trusted that the doctors knew what was best. They learned that the prescribed medication was contraindicated for his condition only after his arrest and evaluation at the District of Columbia jail.

With a significantly impaired mental condition, on the date of the charged offenses, August 19, 2020, Mr. Roseberry woke up, drove from his home in North Carolina to Washington, D.C. and parked on the sidewalk in front of the Library of Congress. He remembers very little of the events of that day. The Indictment charges him with threatening to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(A) & (C) (Count One), and

threatening and conveying false information concerning an attempt or alleged attempt made unlawfully to damage or destroy a building by means of fire and an explosive, in violation of 18 U.S.C. § 844(e) (Count Two).

In the Affidavit filed in support of the Complaint, ECF No. 1-1, the government submitted that on August 19, Mr. Roseberry claimed to have a bomb and a detonator in his possession, *id.* at 2, and was broadcasting live video and audio through a Facebook account, *id.* at 4. According to the complaint, Mr. Roseberry made the following statements:

a. "Hey, call the police and tell them to come out here and clear the Capitol. Tell them to clear the Capitol. Tell them to clear it. These fucking people think I'm joking, don't they. Hey ma'am, will you call them? I've called 911 a couple times. Tell them to come out here and clear this fucking place out. They need to clear that 'cause I got a bomb in here. I don't want nobody hurt. Yes sir, I don't want nobody hurt. I'm not coming here to hurt nobody. I'm not lying, tell them there's some more."

b. "Sir, this thing here, all I'm doing, I'm not gonna let this bomb go off, but if these windows break, see that little speaker right there, it sets off on decimals. Clear the block, clear the block. Joe Biden I'm not hurting nobody, but I think these flags need to go to half-staff brotha'. I'm telling you, my windows pop, this bomb is gonna go, it's made for decimals. Your military experts, that you let get their legs blown off, are the ones that built this and if you don't think it's real gun powder in their boss man, there's gun powder in there this is some of the strongest shit you can get. I got two and a half pound of tannerite. Go ahead and get 'em all in the building, but I'm telling you Biden, if these windows pop this bomb goes and there's five of 'em here."

c. "We here. The fucking revolution starts today Joe Biden. And before you go crackin' any pop on me, you better get your military experts out, ask them motherfuckers what a 7 pound keg of gun powder will do with 2.5 pound of tannerite on that motherfucker."

d. "If you want to shoot me and take the chance of blowing up two-and-a-half city blocks, 'cause that tool box is full, ammonium nitrate is full."

The complaint also states that he said, "please don't shoot the windows the vibe will explode the bomb," "I have no control of it," and "decimals is what sets off not me." *Id.* at 6.

4

The Facebook recordings demonstrate that Mr. Roseberry also said: "They need to get Joe Biden on here because this baby. It's awful. I'm not hurting nobody, Joe. I'm not pulling the trigger on this thing. I can't. There's no way for me to blow this up. Only you can by shooting a bullet through my window." He made multiple similar statements, explaining that he could not and would not explode the device. It would explode only if he was shot.

The complaint states that while in the truck, Mr. Roseberry was holding an old rusted metal can that appeared to be fashioned into an explosive device, *id.* at 6-7, but it was not and explosive device. There was no detonator, only molding clay and fishing equipment. After the can was recovered, it was found to contain a small amount of smokeless powder, considered a low explosive. The device was not capable of detonating by any means. The device was "neither designed nor redesigned for use as a weapon," and therefore, not a "destructive device" under 18 U.S.C. § 921 and not a weapon of mass destruction under 18 U.S.C. § 2332a.

After his arrest, on August 20, 2022, Mr. Roseberry was presented before Magistrate Judge Zia Faruqui. The government requested a competency screening, and the defense did not object. Teresa Grant, Ph.D., a licensed clinical psychologist, evaluated Mr. Roseberry and on August 25, 2021, submitted a report finding that Mr. Roseberry was not competent. Dr. Grant noted that she conferred with the Director of Mental Health Services at the jail, and she and jail staff had concerns about Mr. Roseberry's prescribed medications. The medical staff at the jail prescribed a different medication regimen than that prescribed by Mr. Roseberry's doctor in North Carolina.

Several weeks later, Dr. Grant re-evaluated Mr. Roseberry and on September 20, 2022, submitted a report finding that Mr. Roseberry had been restored to competency. Dr. Grant also confirmed that Mr. Roseberry's medication prior to his arrest had been prescribed by his primary

care physician, not a psychiatrist—as noted above, Mr. Roseberry struggled to find a psychiatrist in his small town. Dr. Grant noted that the medications prescribed were contraindicated for persons with Mr. Roseberry's diagnosis. Dr. Grant has explained to undersigned counsel that the medications prescribed by Mr. Roseberry's primary care physician trigger manic and psychotic episodes in persons with Mr. Roseberry's diagnosis. Dr. Grant also reported that after Mr. Roseberry reported some lingering problems on his current medication regime at the jail, medical staff at the jail again adjusted Mr. Roseberry's medication and the adjustments were effective. He has been stable since that time—for more than ten months.

Mr. Roseberry now has been detained at the jail for nearly a year, since his arrest on August 19, 2021. Consistent with his personality, his behavior has been exemplary. Not only does he follow the rules as required, he has stepped in and rescued guards when other inmates have threatened or assaulted them. As a result he has endured abuse from other inmates, including having urine and feces thrown on him for being "the police."

### Argument

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). Generally, courts should refuse to

release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

Here, the government sought pretrial detention based on the charged crimes of violence and the potential danger to the community. However, the history and characteristics of Mr. Roseberry, the weight of the evidence, and the nature and circumstances of the charged offenses, *see* 18 U.S.C. § 3142(g), demonstrate that there are conditions that will adequately ensure both the safety of the community and Mr. Roseberry's appearance in court.

## I. History and Characteristics of Mr. Roseberry

The evidence before the Court demonstrates that Mr. Roseberry is a peaceful man and not a danger to the community. He is 50 years old and has no history of violence or felony offenses. His only prior criminal offenses were non-violent misdemeanors committed when he was 18 years old. He has demonstrated his commitment to non-violence while at the jail, by helping to protect the guards from violence. Even on the date of the charged offenses, Mr. Roseberry repeatedly confirmed that he did not want to and would not hurt anyone.[1]

Moreover, any danger that Mr. Roseberry presented on August 19, 2022 has been abated by the prescription of the correct medication to alleviate his mental health symptoms. Properly medicated, Mr. Roseberry has never been a danger to anyone, and the Court does not need to

---

[1] Some of the evidence also suggests that Mr. Roseberry did not appreciate the wrongfulness of his conduct. As documented in a video recording, following his arrest, Mr. Roseberry spoke with government agents. Among other statements, he said, "I illegally parked. That's the worst thing I think I've done. Cause I didn't cause no harm. Maybe just cause a little chaos, and I apologize for that." Although he said he thought he would do life in prison, he later said, "Can't I just pay a fine?"

incarcerate Mr. Roseberry to ensure that he is properly medicated. Undersigned counsel has spoken to Mr. Roseberry's wife, who represented that she will act as a third-party custodian to ensure that Mr. Roseberry continues to take his prescribed medication and complies with mental health treatment, as he was doing prior to his arrest, unfortunately with poorly prescribed medication at that time.

## II. Weight of the Evidence

While the government may argue that the weight of the evidence is strong because Mr. Roseberry broadcast his statements on Facebook and his actions and statements are recorded, those actions and statements do not support the charged offenses. The Indictment charges Mr. Roseberry with threatening to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(A) & (C) (Count One), and threatening and conveying false information concerning an attempt or alleged attempt made unlawfully to damage or destroy a building by means of fire and an explosive, in violation of 18 U.S.C. § 844(e) (Count Two). Mr. Roseberry never threatened to use a weapon of mass destruction or to damage or destroy a building. He clearly stated that he would not and could not explode the device, and stated only that the device would explode, if he was shot—in other words, the officers would explode the device if that is how they chose to remove him from the sidewalk. This obstructed the police officers, but did not threaten to use a weapon of mass destruction. Moreover, the device was not a weapon of mass destruction because the device was "neither designed nor redesigned for use as a weapon." *See* 18 U.S.C. § 921(a)(4).

The evidence may arguably demonstrate that Mr. Roseberry conveyed false information concerning an attempt being made to intimidate another, in violation of 18 U.S.C. § 844(e), but that is not how the 844(e) offense is charged. Moreover, the recommended sentencing range

under the United States Sentencing Guidelines for such an offense, if Mr. Roseberry enters a guilty plea, would be 12 to 18 months. Section 2A6.1 applies to violations of § 844(e). Under § 2A6.1(a)(1), the base offense level is 12. Under § 2A6.1(b)(4), four levels are added because the offense resulted in a substantial disruption of public, governmental, or business functions or services. If Mr. Roseberry entered a guilty plea, three levels would be subtracted for acceptance of responsibility, for a total offense level of 13.  Because Mr. Roseberry has no criminal history, he is in criminal history category I, and the applicable sentencing range is 12 to 18 months. Mr. Roseberry has nearly completed a 12 months sentence, and if the Court imposed a sentence of a year and a day, allowing him to earn good time credits of 54 days,[2] he has completed that sentence. Thus, even if the weight of the evidence is strong, Mr. Roseberry has strong incentive to abide by any conditions of release and not provide any reason for a greater sentence.

## III. Nature and Circumstances of the Charges

The charged offenses—threatened use of a weapon of mass destruction and threats to use explosive materials—are, of course, extremely serious. However, the Court should not consider all of the possible types of violations of 18 U.S.C. §§ 844(e) and 2332a, but the specific conduct at issue here. While Mr. Roseberry's conduct caused a tremendous disruption to law enforcement and those in the area where it occurred, Mr. Roseberry did not have the means or the intent to harm anyone. He will not present a danger to the community if released.

## <u>Conclusion</u>

For the forgoing reasons, and such other reasons as may be presented at a hearing on this motion, Mr. Roseberry respectfully moves this Honorable Court to revoke the detention order

---

[2] Pursuant to 18 U.S.C. § 3624(b)(1), federal prisoners are awarded 54 days per year in good-time credits.

and release him to the third-party custody of his wife, on the condition that he comply with the conditions of the high intensity supervision program, including home detention with electronic GPS monitoring, to be monitored in North Carolina.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C.  20004
(202) 208-7500