UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA  :

        v.  :  21-CR-0576 (RC)

FLOYD RAY ROSEBERRY  :

DEFENDANT'S REPLY TO
GOVERNMENT'S REPLY IN OPPOSITION TO
DEFENDANT'S MOTION TO RECONSIDER
ORDER OF DETENTION AND IMPOSE CONDITIONS OF RELEASE

Pending before this Honorable Court is Mr. Floyd Ray Roseberry's Motion to Reconsider Order of Detention and Impose Conditions of Release, ECF No. 13. In opposition to the motion, the government fails to address (or acknowledge) the undisputed evidence from the court-appointed forensic examiner that at the time of the charged offenses, Mr. Roseberry was under the influence of prescribed medications that are contraindicated for his condition and can induce manic and psychotic states. *See* Government's Reply in Opposition to Defendant's Motion to Reconsider Order of Detention and Impose Conditions of Release (Gov't Opp.), ECF No. 14. Rather than address the evidence that demonstrates that Mr. Roseberry—now properly medicated—is not a danger to the community, the government selectively quotes some of the false, and sometimes nonsensical, statements Mr. Roseberry made while under the influence of those medications. Mr. Roseberry's medical history, his conduct at the jail, and a full review of the statements he made at the time of the charged offenses demonstrate that he is not a danger to the community and there are conditions of release that will reasonably assure the safety of the community. In response to the government's arguments, counsel submits the following.

**I. The Applicable Guidelines**

In support of Mr. Roseberry's motion, undersigned counsel previously noted that Mr. Roseberry has now been detained for a period that is within the applicable sentencing range under the United States Sentencing Guidelines (U.S.S.G.)—a range of 12 to 18 months—if Mr. Roseberry enters a guilty plea and is sentenced to a year and a day. This gives him strong incentive to abide by any conditions of release, and he would have no reason to avoid court hearings. The government argues that the range estimated by the defense is inaccurate because it does not account for the application of the terrorism enhancement under U.S.S.G. § 3A1.4. That enhancement, however, applies only to offenses listed in 18 U.S.C. § 2332b(g)(5)(b), and Mr. Roseberry did not commit any of the offenses listed in that subsection.

Mr. Roseberry is charged with a violation of 18 U.S.C. § 2332a, threatening to use a weapon of mass destruction. That offense is listed in § 2332b(g)(5)(b), but he did not commit such an offense. Even if all of the government's representations regarding the evidence are correct, Mr. Roseberry did not threaten to "use" any weapon—he threatened that if the police shot him, the sound of the gun shot would explode a device in his car. "Use" requires more than mere possession. *See Bailey v. United States*, 516 U.S. 137, 143 (1995). As the Supreme Court noted when interpreting the word "use" in relation to a different statute, the "ordinary and natural" meaning of "use" is "'[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.' . . . These various definitions of 'use' imply action and implementation." *Id.* at 145. In *Bailey*, the Court concluded that "use" of a firearm required "active employment." Mr. Roseberry did not threaten to actively deploy a weapon of mass destruction.

As the government notes, conditional threats are threats, Gov't Opp. at 8, but

Mr. Roseberry did not make a conditional threat. He did not say, if Joe Biden doesn't talk to me, I will explode this bomb. He warned (falsely) that there was a bomb and if he was shot, the bomb would explode. He never threatened (conditional or otherwise) that he would use a weapon. Even if his statements constituted threats, they were not threats to "use" a weapon. The alleged conduct may have been criminal, but it was not a threat or a conditional threat to "use" a weapon of mass destruction, as required for a violation of § 2332a.

Moreover, the device itself was not a weapon of mass destruction. The government states that Mr. Roseberry had a rusted can that was later found to have "approximately 1 – 2" of smokeless black powder in the bottom[,] and a fabricated trigger was attached to the top of the can." Gov't Opp. at 4  The device, in fact, was only a rusted can containing a small amount of smokeless powder,[1] with molding clay and a piece of fishing gear on top. There was no triggering mechanism. The device was incapable of detonating with the fake trigger device, by an acoustic mechanism, or by any other means. This was not a weapon of mass destruction as defined by §2332a because it was not designed or redesigned for use as a weapon under 18 U.S.C. § 921(a)(4)(C). There was no triggering device, and the smokeless black powder was a commercially sold, mostly empty, canister of gunpowder. Like a stick of dynamite, smokeless black powder is not a destructive device, absent some modification for use as a weapon. *See United States v. Posnjak*, 457 F.2d 1110 (2d Cir. 1972) (commercially available dynamite not a "destructive device" under 26 U.S.C. § 5845(f)); *United States v. Worstine*, 808 F. Supp. 663

---

[1] The government states that one to two inches of powder was found at the bottom of the can, Gov't Opp. at 4, but undersigned counsel has not seen a report of an analysis of the can that states the amount of smokeless powder found. The Federal Bureau of Investigation report on the analysis of the contents of the can states only that the substance "was identified as a perforated disk-shaped double base smokeless powder. Smokeless powders are considered low explosives." *See* Attachment 2.

(N.D. Ind. 1992) (plastic PVC tubes filled with gunpowder for use as firecrackers not destructive devices because not designed for use as weapons). For the same reason, Tannerite – which Mr. Roseberry falsely claimed to have had – is not a destructive device because it is a commercially available explosive which was not designed or redesigned for use as a weapon. Because he did not threaten to "use" the device and because the device was not a weapon of mass destruction, Mr. Roseberry is not guilty of a violation § 2332a, and thus the terrorism enhancement cannot be applied based on that offense.

The only other charged offense is a violation of 18 U.S.C. § 844(e), which prohibits making threats or conveying false information regarding attempts to kill or injure persons or property. Even if Mr. Roseberry is guilty of such an offense, violations of § 844(e) are not listed offenses in § 2332b(g)(5)(b) as required for application of the terrorism enhancement. Violations of § 844(f)(2), (f)(3), and (i) are listed, but violations of § 844(e) are not. Thus, the terrorism enhancement does not apply to the only charged offense that Mr. Roseberry may have committed, and as set forth in Mr. Roseberry's motion, the applicable sentencing range is 12 to 18 months, if he enters a guilty plea.

**II. Not a Danger to the Community**

In support of its argument that Mr. Roseberry would be a danger to the community if released, the government quotes some of the statements Mr. Roseberry made at the time of the charged offense. First, these quotations are selective. A full review of the statements Mr. Roseberry made demonstrates that he had neither the intent nor the ability to harm anyone. Attached are the government's unofficial transcripts of the statements Mr. Roseberry made while livestreaming on Facebook ("Tr."), including multiple statements indicating that he would not and/or could not explode any device. Tr. at 1 ("I don't want nobody hurt. Yes sir, I don't want

4

nobody hurt. I'm not coming here to hurt nobody. You can have all you want. And you can pick it up because I swear to God I will not hurt this place. I'm here for my own. . . .I'm not pulling the trigger, you are . . . You're the one that's going to pull the trigger. I'm not, Joe Biden. I'm not pulling the trigger on nothing."); *id.* at 2 ("These people got enough trust in me to know that I ain't going to pull the trigger . . . I'm not going to let this bomb go off."); *id.* at 5 ("My heart goes out to everybody, even animals."), *id.* at 6 ("I told my wife. Told her I'd be home on Sunday. Ain't never lied to her. Y'all  . . . better not make it the first time."), *id.* at 7 ("I'm just gunna give options. I'm not gunna hurt nobody. God forbid. I don't wanna die."); *id.* at 8 ("Joe Biden is gunna get to pull the trigger on this one. Cause I have no control over it. I have no control."); *id.* at 8 ("Cause I have no control of what's in my passenger seat."); *id.* at 9 ("I'm not hurting no body."); *id.* at 13 ("There's no way for me to blow this up. Only you can by shooting a bullet through my window. You're the only one that can do it Joe."); *id.* at 13 ("I'm parked up here on the sidewalk right beside all this pretty stuff and they don't realize is that I can't set this thing off."); *id.* at 14 ("Cause I ain't here to blow nobody up. I ain't here to hurt nobody. If I was, I wouldn't have told no one to leave."); *id.* at 16 ("Cause I can't make this bomb go off. I have no way whatsoever to make this bomb go off."); *id.* at 17 ("I want all the buildings around me evacuated. That way, if you do decide to kill somebody Joe, it's only me. It ain't nobody else. . . . Please make sure there ain't nobody else around. Please, cause I don't want to take no lives. I don't."); *id.* at 18 ("You need to send somebody out here to talk to me cause I am not gunna hurt nobody. I promised my God I will not hurt nobody. I promised my wife I will not hurt nobody. I would not kill myself. Imma keep that promise Joe."); *id.* at 19 ("I can't set this bomb off. Joe you're the only one. You're the only one in America that can set this bomb off."); *id.* at 20 ("I'm not moving from this spot, I'm not putting nobody in harm."); *id.* at 21 ("But I'm telling you,

you the man that's gunna set the bomb off. I ain't. I can't do it. I can't kill nobody. I can't kill myself, hurt myself . . . if you shoot, you're the one setting this bomb off, not me cause I have no control. I have none. No control over it."); *id.* at 22 ("I can't set the bomb off, Joe Biden. The man you tell to pull the trigger, the man that pulls the trigger, he's the man that's gunna set it off. Cause I don't want to die Joe. I love everybody."); *id.* at 23 ("I can't set the bomb off. Only you can. I can't set it off. . . We just don't wanna hurt nobody."); *id.* at 24 ("I'm not hurting nobody, Joe. I want to go home.").

Ignoring these repeated statements about his personal desire not to harm anyone, the government relies on what could have happened had the bomb been real. Gov't Opp. at 9. That, however, is a danger that Mr. Roseberry never presented. There was no real bomb because Mr. Roseberry did not want to harm anyone. Even if his statement that he was willing to die—despite also repeatedly saying he wanted to go home safely to his wife—was true, that does not indicate that he would be a danger to the community if released.

Moreover, all of these statements were made when Mr. Roseberry was under the influence of medications that are contraindicated for his condition. These statements are not indicative of who he is or how he normally behaves. There is no evidence to suggest that he has ever or would ever harm anyone.

Despite Mr. Roseberry's repeated statements while livestreaming on Facebook, the government argues that the Court should find that Mr. Roseberry's false statements made under the influence of misprescribed medications demonstrate an intension to harm others. There is no support for such a finding. The government cites Mr. Roseberry's "apparent desire to start a 'revolution'" and "his rhetoric and stated goals," Gov't Opp. at 7, but Mr. Roseberry's manic talk did not reflect any true desire, and reflected no desire for violence—particularly when even

6

in his manic state he was professing his non-violence intent. In fact, even when referring to a "revolution," he emphasized the need for nonviolence. *See* Tr. at 23 ("Talk about this revolution people. Got the foundation started. We just don't wanna hurt nobody.").

The government also seems to suggest that the Court should believe that Mr. Roseberry may have coconspirators who could do harm based on Mr. Roseberry's manic statements on Facebook. Mr. Roseberry falsely claimed there were four others like him who had driven to the city that morning and had devices that could harm people. Following his arrest, Mr. Roseberry readily admitted that he made those statements so that the police would not shoot him. More importantly, there is no evidence that anyone else was involved or drove to the city that morning with Mr. Roseberry.

Apart from the statements made at the time of the offense, in support of the argument that Mr. Roseberry is dangerous, the government points only to a report that Mr. Roseberry made similar nonsensical statements the day before his arrest. The government claims that Mr. Roseberry reportedly "expressed anti-government views and an intent to travel to Virginia or Washington, D.C. to conduct acts of violence." Gov't Opp. at 5. The government has not provided counsel with a report of any witness making such claims, and Mr. Roseberry does not recall making any such statements. Notably, however, the government claims that this report was received the previous day, while Mr. Roseberry was under the influence of the contraindicated prescription medication. Thus, like the statements on the date of the offense, the government's representations regarding this report do not support a finding of dangerousness.

## Conclusion

The evidence does not support a finding that Mr. Roseberry would be a danger to the community if released on conditions. Because he would not be a danger, the Court should revoke

the detention order and release him to the third-party custody of his wife, on the condition that he comply with the conditions of the high intensity supervision program, including home detention with electronic GPS monitoring, to be monitored in North Carolina.

                                      Respectfully submitted,

                                      A. J. KRAMER
                                      FEDERAL PUBLIC DEFENDER

                                              /s/

                                      MARY MANNING PETRAS
                                      Assistant Federal Public Defender
                                      625 Indiana Avenue, N.W.
                                      Washington, D.C.  20004
                                      (202) 208-7500